UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| VERONICA J. AGOSTINO, ) | |
| ) | No. CV-09-108-JPH |
| Plaintiff, ) | |
| ) | ORDER GRANTING DEFENDANT'S |
| v. ) | MOTION FOR SUMMARY JUDGMENT |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

BEFORE THE COURT are cross-motions for summary judgment noted for hearing without oral argument on May 17, 2010 (Ct. Recs. 22,24). Attorney Maureen J. Rosette represents plaintiff; Special Assistant United States Attorney David I. Blower represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge (Ct. Rec. 7). On April 12, 2010, plaintiff filed a reply (Tr. 26). After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 24) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 22).

**JURISDICTION**

Plaintiff applied for supplemental security income (SSI) and disability insurance benefits (DIB) March 6, 2006, alleging disability since July 15, 2005 due to anxiety, depression, lichens planus, right shoulder torn rotator cuff and fractures, arthritis

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                            - 1 -

and tendinitis (Tr. 57-59,60-61,664-667). Her applications were denied initially and on reconsideration (Tr. 49-50,669-672,674-675).

Administrative Law Judge (ALJ) Wayne Araki held a hearing on February 25, 2008. Plaintiff, represented by counsel, and vocational expert Daniel R. McKinney testified (Tr. 682-723). The ALJ found plaintiff was insured for DIB purposes through December 31, 2010 (Tr. 17,18). In his September 3, 2008, decision, he found although plaintiff could not perform past work, there are other jobs she can perform. The ALJ's step five finding meant plaintiff is not disabled as defined by the Act (Tr. 28). On March 26, 2010, the Appeals Council denied review (Tr. 5-7). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on April 10, 2009 (Ct. Recs. 2,4).

**STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcripts, the ALJ's decision, the briefs of both parties, and are summarized here.

Ms. Agostino was 45 years old on the alleged date of onset (Tr. 27). She graduated from high school and completed three years of college, including earning an AAS degree in civil engineering in 1997 (Tr. 68). Ms. Agostino lives alone (Tr. 82,685,690). Daily activities include reading, watching television, caring for pets, and preparing easy meals (Tr. 82-84,86,701). About nine months after onset, plaintiff reported that when she felt well, she walked two miles daily, read the Bible with her neighbor, shopped

for groceries twice a month, and attended church weekly (Tr. 82,85-86).

Ms. Agostino worked for the Social Security Administration (SSA) for five years. When she was terminated in July of 2005, she worked as a senior case technician (Tr. 61,490,685-686). She testified she cannot work because Grave's disease causes hot flashes, chest pain, shaking, numbness, confusion, and fatigue (Tr. 692,698,703). Plaintiff has anxiety and depression (Tr. 708). She suffers about two migraine headaches a month. Lichen planus causes mouth and genital sores. She suffers pain in her right shoulder, stomach, chest, back, and legs. Plaintiff experiences sleep problems and vertigo (Tr. 702,704-705,707-708). Due to shoulder and heart or chest pain, she is able to walk less than a block and sit no more than 30 minutes. Plaintiff testified she can carry less than five pounds. She stays in bed four days a week (Tr. 692-698,700-701,704-705).

**SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the

national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past. If a plaintiff is able to perform previous work, that Plaintiff is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC") assessment is considered. If

plaintiff cannot perform this work, the fifth and final step in the process determines whether plaintiff is able to perform other work in the national economy in view of plaintiff's residual functional capacity, age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon plaintiff to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once plaintiff establishes that a physical or mental impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which plaintiff can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(*citing* 42 U.S.C. § 405(g)). Substantial evidence is

more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989)(*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**ALJ'S FINDINGS**

At step one, the ALJ found plaintiff did not engage in substantial gainful activity after onset on July 15, 2005 (Tr. 18). At steps two and three, ALJ Araki found plaintiff suffers from status post fracture of proximal humerus on the right, status post right rotator cuff tear, Graves' disease, depression and a personality disorder, impairments that are severe but which do not alone or combination meet or medically equal a Listed impairment (Tr. 18, 22). The ALJ found plaintiff less than completely credible (Tr. 24). At step four, he found plaintiff cannot perform her past work (Tr. 26). At step five, relying on a vocational expert, the ALJ found plaintiff could perform other jobs such as general office clerk, election clerk, package inspector, and small parts assembler (Tr. 28). Because the ALJ found Ms. Agostino could perform other work, she is not disabled as defined by the Social Security Act (Tr. 28). While there is evidence of substance abuse in the record, the ALJ's determination plaintiff is not disabled meant he was not required to determine if DAA materially contributes to the disability determination. See *Ball v. Massanari*, 254 F.3d 817 (9th Cir. 2001).

**ISSUES**

Plaintiff alleges the ALJ erred when he weighed the evidence of physical and mental impairment. She contends this in turn led the ALJ to assess an incomplete RFC (Ct. Rec. 23 at 17-24). The Commissioner answers the Court should affirm the decision because it is supported by the evidence and free of error (Ct. Rec. 25 at 18).

**DISCUSSION**

**A. Standards for weighing medical evidence**

In social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 416.929. Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of symptoms. *Bunnell v. Sullivan*, 947, F. 2d 341, 345 (9th Cr. 1991).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989)(citations omitted). More weight is given to a treating physician than an examining physician. *Lester v. Cater*, 81 F.3d 821, 830 (9th Cir. 1995). Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the ALJ may reject an opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v.*

1  *Secretary of Health and Human Serv.*, 44 F.3d 1435, 1463 (9th Cir.
2  1995).
3     In addition to the testimony of a nonexamining medical
4  advisor, the ALJ must have other evidence to support a decision to
5  reject the opinion of a treating physician, such as laboratory
6  test results, contrary reports from examining physicians, and
7  testimony from the claimant that was inconsistent with the
8  treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747,
9  751-52 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d 1042-43 (9th
10 Cir. 1995).

11 **B. Treating and examining opinions**

12     Plaintiff alleges the ALJ erred when he weighed the
13 conflicting opinions of treating, examining, and reviewing
14 professionals: primary care treating physician Anne Montgomery,
15 M.D.; treating orthopedic surgeon Craig Barrow, M.D.; examining
16 psychologist James Bailey, Ph.D. (4/18/2006); treating therapist
17 Dennis Anderson, MS (1/2004 through 6/2006), and reviewing
18 physician Eugene Kester, M.D. (6/2006)(Ct. Rec. 23 at 18-24).
19     The ALJ considered Dr. Montgomery's four contradicted
20 opinions (Tr. 19-22,24-26, referring to Exhibits 11F,21F,23F and
21 26F at Tr. 231-234 (April 2006); Tr. 478-481 (November 2006); Tr.
22 469-472 (March 2007), and Tr. 478-481 (November 2007). Dr.
23 Montgomery began seeing plaintiff on October 31, 2005 (Tr. 384),
24 about three months after onset. On November 30, 2005, she opined
25 plaintiff was unable to perform her usual work as a typist
26 (although Ms. Agostino just found a new job as a typist and
27 receptionist) because plaintiff fractured her right arm when she
28 fell earlier in November (Tr. 380-381). ER records show prior to

her fall, plaintiff's family said she was taking 4 or 5 ultram pills at a time. The ALj notes it "was felt that these were triggering her seizures" that caused her to fall and break her arm (Tr. 24; Tr. 285,381-382). In April of 2006, Dr. Montgomery opined plaintiff's ability to work was severely limited. Ms. Agostino was unable to lift, handle, or carry. Her arm fracture was very slow healing. Future surgery was planned and plaintiff was undergoing physical therapy. Dr. Montgomery indicated is an indication of current or historical alcohol or drug abuse (Tr. 232-233).

    Seven months later, in November of 2006, Dr. Montgomery again opined right shoulder surgery was planned when medical problems stabilized, including mouth sores caused by lichen planus and stabilizing symptoms of Grave's disease. Plaintiff's use of her right arm was limited due to restricted ROM and pain. Dr. Montgomery limited plaintiff to sedentary work, as before. She could not lift with her right arm, and suffered poor stamina (Tr. 478-481)

    ALJ considered Dr. Barrow's contradicted opinion in March of 2006 that plaintiff could not lift, handle, or carry and had no use of her right arm. Dr. Barrow diagnosed a torn right rotator cuff, right arm proximal humerus fracture, impingement, and AC joint degenerative disc disease (DDD)(Tr. 19, referring to Tr. 229. Dr. Barrow recommended physical therapy and opined without medical treatment the impairments would last a maximum of 12 months (Tr. 228-230). Later, in response to a question by Ms. Agostino, Dr. Barrow opined he was unaware of rotator cuff tears caused by typing (Tr. 402).

    The ALJ considered the contradicted opinion of examining

psychologist Dr. Bailey (Tr. 20,22,24,26 referring to Tr. 235-243). On April 18, 2006 [1] [about nine months after onset], Dr. Bailey notes plaintiff complained of depression, agitation and sleep problems. She has seen therapist Dennis Anderson since 2004 "weekly and works on assertiveness." Plaintiff attends physical therapy 1-2 times a week (Tr. 235). At her last job with the SSA she performed basic secretarial work "such as filing and visiting with others." The job ended "because she took lorazepam and became confused" but her boss did not believe her. The case was in arbitration. Plaintiff admitted two past treatment attempts for oxycontin addiction (Tr. 236). Her daughter pays the bills because plaintiff is unable to get out bed (Tr. 236). She has a license and drives, needs help with cleaning and shopping, walks up to 2 miles a day, attends church occasionally and watches 1-2 movies a day (Tr. 237). Interestingly, Dr. Bailey observes plaintiff appears to be right handed. "She has a notebook and made a few notes" (Tr. 237).

Dr. Bailey diagnosed rule out prescription drug abuse and personality disorder NOS with passive-aggressive and depressive features. He assessed a current GAF of 60, while the highest in the past year was 75. He notes plaintiff's MMPI-2 results are of "doubtful validity" (Tr. 238). Dr. Bailey assessed marked limitations in depressed mood and physical complaints, a number of moderate limitations, and estimated the impairment would last a maximum of six months (Tr. 241-243).

---

[1] The report is dated April 14, 2006 (Tr. 235) and April 18, 2006 (Tr. 243). The Court uses the latter for clarity.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 11 -

The ALJ considered treating therapist Mr. Anderson's June 1, 2006 opinion (Tr. 20, referring to Tr. 356-357). He opined plaintiff's overuse of pain medication exacerbates depression (Tr. 356). He notes it "has been challenging to maintain a consistent thread of treatment with her," having seen plaintiff "intermittently" since October of 2004. Mr. Anderson opined her symptoms are difficult to manage on an infrequent basis. He felt she would benefit from ongoing group and individual psychotherapy to help stabilize her life (Tr. 357).

The ALJ considered the contradicted June of 2006 opinion of Dr. Kester, an agency reviewing doctor (Tr. 20, referring to Tr. 144-146 at Tr. 142). In June of 2006 Dr. Kester notes plaintiff took narcotic pain medication at work for her right shoulder injury and "became confused at work." She was gone for three hours. Plaintiff said she was with her therapist, but this was untrue (Tr. 142). Two months after onset, in September of 2005, Dr. Kester notes records indicate normal mental status after a Carribean cruise vacation. Test results on the MMPI-2 are of "doubtful" validity. He assessed several moderate limitations and limited plaintiff to superficial public contact (Tr. 144-146).

The ALJ considered Dr. Montgomery's contradicted 2007 opinions (Tr. 24-26; Tr. 469-472,478-481).

In March of 2007, Dr. Montgomery notes shoulder surgery and tooth extractions are planned and therapy for Grave's disease is not yet stable (Tr. 470,472). She assessed essentially the same RFC as previously (Tr. 470-471). In November of 2007, plaintiff had not had surgery, and Dr. Montgomery repeated her March opinion (Tr. 479-481).

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 12 -

To aid in weighing the conflicting medical evidence, the ALJ assessed plaintiff's credibility (Tr. 24-26), an unchallenged finding. Credibility determinations bear on evaluations of medical evidence when an ALJ is presented with conflicting medical opinions or inconsistency between a claimant's subjective complaints and diagnosed condition. *See Webb v. Barnhart*, 433 F.3d 683,688 (9th Cir. 2005).

It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715,722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821,834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915,918 (9th Cir. 1993).

The ALJ gave clear and convincing reasons for his unchallenged credibility assessment, including in part (1) drug seeking behavior and failing to take medication as prescribed; (2) complaints unsupported by the evidence; (3) testimony inconsistent with treatment records; and (4) activities inconsistent with claimed limitations (Tr. 24-25).

In December of 2007, Dr. Montgomery declined plaintiff's request for stronger medication because she had a history of inappropriate use, as the ALJ observes (Tr. 25, referring to Exhibit 30F/108-109 at Tr. 597, repeated at Tr. 654). Failing to follow medical treatment impairs credibility. *See Fair v. Bowen,* 885 F.2d 597,603 (9th Cir. 1989); *Thomas v. Barnhart*, 278 F.3d 947,958-959 (9th Cir. 2002). Drug seeking behavior is another well recognized reason to discount credibility. *See Edlund v. Massanari*, 253 F.3d 1152,1157-1158 (9th Cir. 2001).

Medical findings undercut plaintiff's credibility (Tr. 24). The ALJ relied on the results of examining doctor Christopher Goodwin, M.D., in May of 2006, about ten months after onset:

> On examination she had "immediate psychogenic overlay" such as groaning with light touch of the scapula and cogwheel type resistance [with] even the slightest range of motion of the upper extremity (Exhibit 18F at 5-6). The claimant's non-organic findings undercut her credibility.

(Tr. 24, referring to Tr. 362-363). Dr. Goodwin would only treat plaintiff in a "narcotic free program" (Tr. 363).

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341,345 (9th Cir. 1991).

Plaintiff testified the prescribed migraine medication she takes regularly does not prevent migraine headaches (Tr. 696). The ALJ points out Dr. Montgomery's treatment notes indicate plaintiff does well on the same medication (Tr. 25, referring to Tr. 576-577).

The ALJ considered plaintiff's activities. She took a Carribean cruise two months after onset (September of 2005 at Tr.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT - 14 -

290); walked up to two miles and watched 1-2 movies daily; attended church occasionally (April 2006 at Tr. 237); pruned roses and pulled weeds (May of 2006 at Tr. 362); went dancing (May of 2006 at Tr. 461); and camped (August of 2006 at Tr. 467).

Each reason is clear, convincing and supported by substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 958-959 (9th Cir. 2002)(proper factors include inconsistencies in plaintiff's statements, inconsistencies between statements and conduct, and extent of daily activities). While an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence, it is a proper factor to consider. *See Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)(en banc). Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints. 20 CFR §§ 404.1530,426.930; *Fair v. Bowen*, 885 F.2d at 603.

When assessing the contradictory evidence, the ALJ considered the opinions of other treating professionals. On July 2, 2007, treating neurologist John Wurst, M.D., assessed episodic migraine and numerous subjective concerns "with no objective abnormalities on neurologic exam." Dr. Wurst notes plaintiff had very good results with maxalt-MLT [rizatriptan] for migraine in the past, but it was not covered by her insurance (Tr. 21, referring to Tr. 473). Based on plaintiff's complaints of speech and cognitive problems, Dr. Wurst planned to taper her current migraine medication, topamax [topiramate] (tr. 473). More than three weeks later, on July 27, 2007, Dr. Montgomery observes plaintiff had been doing very well on, but stopped taking, topomax after seeing

Dr. Wurst. Dr. Montogmery told plaintiff to start titrating topamax back up to the previous dose (Tr. 21; Tr. 574-576). On August 2, 2007, Dr. Wurst encouraged plaintiff to follow Dr. Montgomery's plan, specifically, to titrate back up her dose of topamax (Tr. 475). While it requires a close reading of the record, the ALJ is correct plaintiff apparently chose to stop taking topamax against the recommendation of her treating neurologist (Tr. 21, Tr. 475), as well as her primary care physician, a choice undermining plaintiff's claim of disabling headaches. The ALJ notes a lot of plaintiff's drug seeking behavior appears tied to migraine complaints in the ER, and none of Dr. Montgomery's opinions list migraine as a severe impairment (Tr. 22), additional reasons which support the ALJ's assessment of the evidence.

The ALJ properly weighed the conflicting evidence. Dr. Montgomery opined plaintiff's hyperthyroidism "very significantly interfered with her ability to walk and handle"; poor nutrition [caused by lichen planus and tooth extractions] significantly interfered with walking, and plaintiff could not lift her right arm (Tr. 425). The Commissioner correctly observes the ALJ's reasons for rejecting these contradicted assessed limitations include (1) contradictory findings by plaintiff's orthopedic treatment specialists, and (2) limitations related to lichen planus did not last the requisite twelve months (Ct. Rec. 25 at 8-9, citing Tr. 26; 425,469-472,478-481). Both are specific, legitimate and fully supported by the record.

Similarly, the ALJ's failure to accept or reject Dr. Barrow's March of 2006 opinion plaintiff could not use her right arm (Tr.

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT                                      - 16 -

229) is at most harmless error. Dr. Barrow opined the limitation would last a maximum of three to twelve months (Tr. 230). The Commissioner asserts any error by the ALJ in failing to address Dr. Barrow's opinion is harmless error since the doctor did not expect the limitation to last twelve months (Ct. Rec. 25 at 10).

An ALJ properly rejects the opinion of a treating or examining doctor if it is contradicted by another doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211,1216 (9th Cir. 2005). The ALJ did not specifically address Dr. Barrow's March 2006 opinion plaintiff had no use of her right arm; however that evidence was neither "significant nor probative" and there was substantial evidence to the contrary. *See Howard ex rel. Wolff v. Barhart*, 341 F.3d 1006,1012 (9th Cir. 2003). The error if any is harmless because the ALJ pointed out plaintiff's extensive activities; these are inconsistent with Dr. Barrow's assessed "no use" of plaintiff's right arm. Plaintiff engaged in a wide variety of activities near the date of Dr. Barrow's opinion, including pruning roses and pulling weeds (*cf.* Tr. 229 *with* Tr. 362). An ALJ may properly discount an assessed limitation contradicted by plaintiff's activities. *See e.g., Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685,690 (9th Cir 2001).

The ALJ properly weighed the reports by Drs. Bailey and Kester. With one exception, the ALJ adopted Dr. Kester's narrative RFC (Tr. 23; 146). The Commissioner accurately points out the ALJ rejected reviewing Dr. Kester's assessed social limitations by relying on the narrative portion of examining psychologist Dr. Bailey's report. The ALJ found plaintiff's social limitations were

"related to the specific work environment at her most recent job" (Tr. 26), an unchallenged finding on appeal (Ct. Rec. 25 at 14, n.4).

The ALJ assessed an RFC that included frequent contact with the general public, co-workers and supervisors. Plaintiff could understand, remember, and carry out simple and detailed, but not complex, instructions or tasks (Tr. 715-716).

Relying on *Stubbs-Danielson v. Astrue*, 539 F.3d 1169 (9th Cir. 2008), the Commissioner asserts the ALJ's RFC translates plaintiff's condition into the only concrete restrictions available to him - in *Danielson*, this was the state agency psychologist's limitation to "simple tasks." The Court found this does not constitute a rejection of the examining physician's opinion (Ct. Rec. 25 at 14-15, citing *Stubbs*, 539 F.3d at 1174 (additional citation omitted).

The ALJ properly weighed the conflicting evidence. The assessed RFC is supported by the record and free of legal error. To the extent the ALJ rejected some of the contradicted opinions of some of the treating, examining, and reviewing professionals, his reasons are legitimate, specific, and supported by substantial evidence in the record. *See Lester v. Chater*, 81 F.3d at 830-831 (holding that the ALJ must make findings setting forth specific, legitimate reasons for rejecting the treating physician's contradicted opinion).

The trier of fact, and not the reviewing court, must resolve conflicts in the evidence and, if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Burch*

*v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**CONCLUSION**

Having reviewed the record and the ALJ's conclusions, this Court finds the ALJ's decision is free of legal error and supported by substantial evidence..

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment **(Ct. Rec. 24)** is **GRANTED.**

2. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 22)** is **DENIED.**

The District Court Executive is directed to file this Order, provide copies to counsel for Plaintiff and Defendant, enter judgment in favor of Defendant, and **CLOSE** this file.

DATED this 14th day of July, 2010.

                            s/ James P. Hutton

                            JAMES P. HUTTON
                      UNITED STATES MAGISTRATE JUDGE